Javier L. Merino #078112014
**THE DANN LAW FIRM, PC**
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: 216-373-0539
Facsimile: 216-373-0536
notices@dannlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

| | |
|---|---|
| **SALLY WEBER,** | CASE NO. |
| and | JUDGE |
| **CHRISTOPHER WEBER,** | **COMPLAINT FOR DAMAGES** |
| and | **JURY DEMAND ENDORSED HEREON** |
| **LAWRENCE WEBER,** | |
| Plaintiffs, | |
| vs. | |
| **NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,** | |
| Defendant. | |

Plaintiffs Sally Weber, Lawrence Weber, and Christopher Weber, through counsel, state as follows for their *Complaint for Damages* against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing (the "Complaint"):

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Sally Weber ("Sally"), Lawrence Weber ("Lawrence"), and Christopher Weber ("Chris") (collectively, "Plaintiffs") are the owners of residential real property, located at and commonly known as 423 Silver Hill Rd., Cherry Hill, NJ 08002-1642 (the "Home").

2.    Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

3.    Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") is the owner and servicer of a note executed by Plaintiffs (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). A copy of the Loan is attached as **Exhibit 1**. The Loan is insured by the Federal Housing Administration (the "FHA").

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA).

5.    This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

7.    This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

8.    In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9.    Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

10.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

11.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

13.     Plaintiffs assert claims for relief against Shellpoint for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

14.     Plaintiffs have a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

15.     Plaintiffs also assert a common law claim for breach of contract and a statutory claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA").

**FACTUAL BACKGROUND**

16.     On or about June 9, 2015, Plaintiffs and non-party Danielle Ruediger-Weber f/k/a Danielle Ruediger ("Danielle") obtained the Loan from non-party Trident Mortgage Company LP ("Trident").

17.     On or about July 1, 2016, Plaintiffs encountered financial difficulty and were unable to make timely payments pursuant to the terms of the Loan.

18.     On or about March 10, 2017. Trident assigned all of its rights, title, and interest in the Loan to non-party Ditech Financial LLC ("Ditech").

19.     On July 24, 2017, Ditech filed a complaint against Plaintiffs in the Camden County Superior Court in the matter captioned *Ditech Financial LLC vs. Christopher R. Weber*, assigned docket number SWC F 017627-17 (the "Foreclosure Action").

20.     On March 15, 2018, Ditech obtained a foreclosure judgment in the Foreclosure Action.

21.     On July 23, 2018, Chris and Danielle filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey, Case No. 18-24629-JNP. The case was converted to Chapter 13 on February 5, 2019 and dismissed on September 11, 2019.

22.     On or about September 11, 2018. Ditech assigned all of its rights, title, and interest in the Loan to Shellpoint.

23.     On December 3, 2018, Sally and Lawrence filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey, Case No. 18-33821-MBK.

24.     Plaintiffs sent correspondence dated October 10, 2019 and captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11)" for failing to acknowledge that Lawrence is a borrower on the Loan and refusing to consider Lawrence's income in the loss mitigation process ("NOE #1") to Shellpoint at the address designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). A copy of NOE #1 is attached as **Exhibit 2**.

25.     Neither Plaintiffs nor their counsel (Ira J. Metrick) received send any response that substantively addresses the errors asserted by NOE #1 and, upon information and belief, Shellpoint failed to mail any response to NOE #1.

26.     On or about October 11, 2019, Plaintiffs submitted a loan modification application (the "Application"). After receipt of two packages of additional documents and information, Shellpoint deemed the Application complete on October 18, 2019.

27.     On or about October 24, 2019, Shellpoint approved the Loan to enter into a Trial Period Plan ("TPP") that required three trial payments in the months of December 2019, January 2020, and February 2020. The TPP does not list Lawrence as a borrower on the Loan. A copy of the TPP is attached as **Exhibit 3**.

28.     On or about December 4, 2019, Shellpoint sent correspondence to Plaintiffs that confirmed that Plaintiffs timely and properly accepted the TPP and Plaintiffs timely made the first trial payment. A copy of the December 4, 2019 correspondence is attached as **Exhibit 4**.

29.     Plaintiffs timely made the second and third trial payments, and as a result, Shellpoint sent Plaintiffs a permanent loan modification dated March 6, 2020 that required a response by March 20, 2020 and regular monthly payments beginning April 1, 2020 (the "March 2020 Modification Documents"). A copy of the March 2020 Modification Documents is attached as **Exhibit 5**.

30.     Plaintiffs fully executed the March 2020 Modification Documents on March 17, 2020. *See*, Exhibit 5.

31.     Plaintiffs sent the executed documents to Shellpoint by overnight mail and Shellpoint received the same on March 18, 2020. A copy of tracking information from FedEx is attached as **Exhibit 6**.

32.     On April 1, 2020, Chris called Shellpoint to make a monthly payment. After waiting on hold for four and a half hours, he was told by a Shellpoint representative that the permanent modification was not implemented, the trial period was over, and no payments have been credited to the Loan.

33.     Around this time, a representative of Shellpoint notified Plaintiffs that Shellpoint would be mailing new modification paperwork that they would be required to sign.

34.     Plaintiffs, through counsel, sent correspondence dated April 28, 2020 and captioned "Request for Information Pursuant to Section 1026.36 of Regulation X" ("RFI #1") and "Notice of Error Pursuant to Section 1024.35(b) of Regulation X" ("NOE #2") to Shellpoint at the Designated Address. A copy of RFI #1/NOE #2 is attached as **Exhibit 7**.

35.     Through RFI #1, Plaintiffs requested information related to the Loan, specifically:

   a.  Confirmation that Shellpoint received the March 2020 Modification Documents;

   b.  Confirmation that Shellpoint received the April 1, 2020 payment and would credit the Loan with the payment; and,

   c.  Confirmation that a second version of the permanent modification documents would be sent to Plaintiffs at the Home.

*See*, Exhibit 7.

36.     Through NOE #2, Plaintiffs alleged that Shellpoint committed the following errors in the servicing of the Loan:

   a.  Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to accept the executed March 2020 Modification Documents; and,

      b.   Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly accept, apply, and/or credit the April 1, 2020 mortgage payment to the Loan (also errors pursuant to 12 C.F.R. §§ 1024.35(b)(1)-(3)).

*See*, Exhibit 7.

37.    As of February 28, 2021, Plaintiffs have not received any correspondence from Shellpoint in acknowledgment of RFI #1/NOE #2.

38.    Neither Plaintiffs nor their counsel (Ira J. Metrick) received any response that provides the information requested by RFI #1 nor substantively addresses the errors asserted by NOE #2 and, upon information and belief, Shellpoint failed to mail any response to RFI #1/NOE #2.

39.    On or about June 26, 2020, Suiwana, a Shellpoint representative in its Loss Mitigation Department, informed Plaintiffs that Shellpoint purportedly mailed the new modification paperwork to Plaintiffs' bankruptcy counsel (Brad Sadek) on May 6, 2020 (the "May 2020 Modification Documents").

40.    Neither Plaintiffs nor their bankruptcy counsel (Brad Sadek) received the May 2020 Modification Documents at this time and upon information and belief, Shellpoint failed to mail these documents on or about May 6, 2020.

41.    Plaintiffs, through counsel, sent correspondence dated July 2, 2020 and captioned "Request for Information Pursuant to Section 1026.36 of Regulation X" ("RFI #2") and "Notice of Error Pursuant to Section 1024.35(b) of Regulation X" ("NOE #3") to Shellpoint at the Designated Address. A copy of RFI #2/NOE #3 is attached as **Exhibit 8**.

42.    Through RFI #2, Plaintiffs requested information related to the Loan, specifically:

    a.   Proof of mailing of the May 2020 Modification Documents that were purportedly mailed by Shellpoint on May 6, 2020; and,

    b.   Confirmation that Plaintiffs' counsel was an authorized party on Plaintiffs' account.

*See*, Exhibit 8.

43.    Through NOE #2, Plaintiffs alleged that Shellpoint committed the following errors in the servicing of the Loan:

    a.   Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to acknowledge that Plaintiffs' counsel was an authorized party on Plaintiffs' account;

    b.   Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to provide Plaintiffs and/or their counsel with the May 2020 Modification Documents;

    c.   Errors pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to accept mortgage payments (also errors pursuant to 12 C.F.R. §§ 1024.35(b)(1)-(3)).

*See*, Exhibit 8.

44.    As of February 28, 2021, Plaintiffs have not received any correspondence from Shellpoint in acknowledgment of RFI #2/NOE #3.

45.    Neither Plaintiffs nor their counsel (Ira J. Metrick) received any response that provides the information requested by RFI #2 nor substantively addresses the errors asserted by NOE #3 and, upon information and belief, Shellpoint failed to mail any response to RFI #2/NOE #3.

46.    According to FedEx tracking information, Shellpoint mailed the May 2020 Modification Documents to Ira J. Metrick on July 29, 2020. Plaintiffs fully executed the May 2020 Modification Documents and the same was received by Shellpoint on August 12, 2020, twelve

(12) days after Metrick's receipt on July 31, 2020. A copy of the May 2020 Modification Documents and FedEx tracking information is attached as **Exhibit 9**.

47.     As of December 3, 2020, Shellpoint had admittedly not implemented the permanent modification despite receiving the May 2020 Modification Documents nearly four months earlier.

48.     On December 12, 2020, Shellpoint representative Stephanie Bruce ("Stephanie") sent an email correspondence to Plaintiffs claiming, "Please contact your attorney regarding the modification being recorded on the account. The holdup is not on our end. Please make sure you continue to make your monthly payments in the meantime so we do not have an issue getting it recorded."

49.     On December 12, 2020, Plaintiffs responded to Stephanie asking why Shellpoint believed that the holdup was not on its end.

50.     On December 14, 2020, Stephanie provided a response wherein she falsely claimed that Shellpoint did not receive correctly filled out documents until the middle of October 2020. Stephanie instructed Plaintiffs to reach out to Brad Sadek "to get an update" and that Shellpoint needed "court approval because of the bankruptcy filing."

51.     On December 23, 2020, Attorney Sadek responded to Stephanie informing her that the Home was no longer part of Sally and Lawrence's bankruptcy estate under the confirmed plan and therefore there was no need for court approval. Further, if Shellpoint required court approval, Shellpoint could file a motion for relief to proceed with the modification so Plaintiffs would not have to incur further financial burden.

52.     Plaintiffs, through counsel, sent correspondence dated January 22, 2021 and captioned "Request for information pursuant to 12 C.F.R. § 1026.36" ("RFI #3") to Shellpoint at the Designated Address. A copy of RFI #3 is attached as **Exhibit 10**.

53.     Through RFI #3, Plaintiffs requested information related to the Loan, specifically:

    a.  An exact reproduction of the life of loan mortgage transaction history;
    b.  Copies of servicing notes;
    c.  Copies of broker's price opinions;
    d.  A copy of the original Note;
    e.  Copies of the last two (3) escrow analyses
    f.  An accurate reinstatement quote;
    g.  Dates upon which Shellpoint received loss mitigation applications;
    h.  Written correspondence relating to loss mitigation;
    i.  Dates upon which Shellpoint received executed loss mitigation agreements; and,
    j.  Dates upon which Shellpoint received appeals of loss mitigation eligibility.

*See*, Exhibit 10.

54.     Shellpoint received RFI #3 on January 27, 2021. *See*, Exhibit 10.

55.     As of February 28, 2021, Plaintiffs have not received any correspondence from Shellpoint in acknowledgment of RFI #3.

56.     Shellpoint is not required to provide the information requested by RFI #3 until March 11, 2021.

57.     Plaintiffs, through counsel, sent correspondence dated January 22, 2021 and captioned "Request for information pursuant to 12 C.F.R. § 1026.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" ("RFI #4") to Shellpoint at the Designated Address. A copy of RFI #4 is attached as **Exhibit 11**.

58.     Through RFI #4, Plaintiffs requested information related to the Loan, specifically:

    a.  The name, address, and contact information for the current owner or assignee of the Loan;
    b.  The identity of and address for the master services of the Loan;
    c.  The identity of and address for the current servicer of the Loan; and,
    d.  An accurate statement of the total outstanding balance on the Loan;

*See*, Exhibit 11.

59.     Shellpoint received RFI #4 on January 28, 2021. *See*, Exhibit 11.

60.     As of February 28, 2021, Plaintiffs have not received any correspondence from Shellpoint in acknowledgment of RFI #4.

61.     As of February 28, 2021, Plaintiffs have not received any response from Shellpoint providing the information requested by RFI #4.

62.     Shellpoint continues to refuse to implement the permanent modification despite Plaintiffs fully complying with every obligation imposed upon them by Shellpoint.

**DAMAGES INCURRED BY AND IMPACT UPON PLAINTIFFS**

63.     Shellpoint's actions directly and proximately caused the following actual damages to Plaintiffs:

    a.   Shellpoint refuses to implement a permanent modification on the Loan;

    b.   Shellpoint refuses to accept, apply, or credit payments towards the Loan;

    c.   On information and belief, the Loan was assessed and continues to be assessed improper fees and/or charges;

    d.   Shellpoint has delayed Plaintiffs' ability to rehabilitate their credit;

    e.   Plaintiffs have remitted $34,041.08 in Modification payments;

    f.   Plaintiffs had to retain and pay legal counsel to submit the requests for information and notices of error to Shellpoint, pay postage costs for the mailing of those documents, and review the responses to those documents;

    g.   To ameliorate the negative economic impact of COVID-19, the Senate unanimously passed the *Coronavirus Aid, Relief, and Economic Security Act* ("CARES Act")—commonly known as "Phase Three" of the coronavirus economic relief packages—on March 25, 2020. On March 27, 2020, the House of Representatives passed the CARES Act by voice vote. President Trump

signed the bill into law that same day. The CARES Act provides a mortgage payment forbearance option for all borrowers of FHA-insured loans who, either directly or indirectly, suffer financial hardship due to the COVID-19 emergency. Plaintiffs have suffered a financial hardship and are in need of an FHA forbearance. However, due to Shellpoint's refusal to implement the Modification, Plaintiffs have been unable to secure the FHA forbearance. Shellpoint's actions have directly and adversely affected Plaintiffs in that Plaintiffs have been forced to continue their mortgage payments, which in turn has caused them to fall behind on other bills. Specifically:

   i. Plaintiffs have been unable to make timely payments on their PSE&G heating bill which has placed them in imminent danger of their heat and electricity being shut off. A copy of their PSEG bill is attached as **<u>Exhibit 12</u>**.

   ii. Plaintiffs have been unable to make timely payments on their water bill which has placed them in imminent danger of their water being shut off. A copy of their water bill is attached as **<u>Exhibit 13</u>**.

   iii. Plaintiffs have been unable to make their television and internet bill which has placed them in imminent danger of losing these services. A copy of their bill is attached as **<u>Exhibit 14</u>**.

h. Plaintiffs suffered extreme emotional distress directly and proximately caused by Shellpoint's actions driven by the fear that the Home may be subject to still active Foreclosure Action, Shellpoint's delay in processing the modification documents, Shellpoint's refusal to implement the permanent modification, and

the stress and frustration in trying to get Shellpoint to correct errors when Shellpoint admits it received the executed modification documents and Plaintiffs have made each and very payment pursuant to those documents. Plaintiffs' extreme emotional distress has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

64.    Throughout this entire ordeal, Plaintiffs have simply wanted to be able to enjoy the benefit of fully complying with the TPP and the agreements to permanently modify the Loan by having a fresh financial start, continue making timely, proper payments on the Loan and to receive the benefit of the same in starting to rehabilitate their credit, and most importantly, remain in the Home without fear of improper fees and foreclosure.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SHELLPOINT**

65.    Shellpoint's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA. Specifically, Shellpoint has failed to send correspondence in acknowledgment of four requests for information/notices of error, failed to provide information requested by three requests for information, and failed to perform reasonable investigations and provide responses to three notices of error. Additionally, Shellpoint has committed multiple errors pursuant to 12 C.F.R. § 1024.35(b) for failing to properly accept, apply, and/or credit payments towards the Loan.

66.    At the time of the filing of this Complaint, Shellpoint has had Five Hundred Eighty-Four (584) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection,

foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

67.    At the time of the filing of this Complaint, Shellpoint has had Four Hundred Seventy-Nine (479) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

68.    Plaintiffs have reviewed the CFPB's consumer complaint database and have identified other similar alleged RESPA violations by Shellpoint against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 15**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Shellpoint has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE:
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)

69.    Plaintiffs repeat and reallege paragraphs 1 through 68 with the same force and effect as though fully set forth, *infra*.

70.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

71.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

72.    "[B]orrowers may [] submit a notice of error under § 1024.35 relating to the loss mitigation or foreclosure process and to the servicing of the loan, and servicers must comply with the applicable provisions of § 1024.35 regarding such notices of error." 81 Fed. Reg. 72160, 72281.

73.    A servicer must respond to a notice of error by either:

    (A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

74.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

    (A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

    (B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

    (C)    For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

75.     A servicer may request an extension by up to an additional fifteen (15) days (excluding legal public holidays, Saturdays, and Sundays), if they request such an extension prior to the expiration of the thirty (30) day (excluding legal public holidays, Saturdays, and Sundays) deadline to respond. 12 C.F.R. § 1024.35(e)(3)(ii).

76.     "A servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

77.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

78.     NOE #1, NOE #2, and NOE #3 (the "NOEs") each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as they are each a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 2, 7, and 8.

79.     Plaintiffs sent the NOEs to Shellpoint at the Designated Address and Shellpoint received each such notice at such address. *See*, id.

**(NOE #1)**

80.     Through NOE #1, Plaintiffs alleged that Shellpoint (1) failed to acknowledge that Lawrence is a borrower on the Loan and (2) refused to consider Lawrence's income in the loss mitigation process, each of which is a covered error under 12 C.F.R. §§ 1024.35(b)(11). *See*, Exhibit 2; *see also* 81 Fed. Reg. 72160, 72281.

81.    As Shellpoint failed to provide Plaintiffs with any response to NOE #1, Shellpoint failed to timely respond to NOE #1 within thirty (30) days (excluding legal public holidays, Saturdays, and Sundays). *See* 12 C.F.R. § 1024.45(e)(3)(i)(C).

82.    Shellpoint's failure to timely respond to NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k).

83.    Shellpoint did not satisfy its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) to correct the errors through NOE #1 as shown by both the TPP and March 2020 Modification Documents wherein Shellpoint did not list Lawrence as a borrower on the Loan. *See*, Exhibits 3 and 5.

84.    Shellpoint did not satisfy its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) as Shellpoint failed to perform a reasonable investigation into the errors alleged through NOE #1 as a review of the Note (which was attached to NOE #1) and Mortgage would show that Lawrence was a borrower on the Loan. *See*, Exhibit 1.

85.    If Shellpoint had performed a reasonable investigation into the errors alleged by NOE #1, Shellpoint would have recognized Lawrence as a borrower on the Loan and avoided some of the needless delay in implementing the permanent modification.

86.    Shellpoint's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Plaintiffs have suffered actual damages as detailed, *supra*.

**(NOE #2)**

87.    Through NOE #2, Plaintiffs alleged that Shellpoint (1) failed to accept the executed March 2020 Modification Documents, which is a covered error under 12 C.F.R. §§ 1024.35(b)(11)

(*see* 81 Fed. Reg. 72160, 72281), and (2) failed to properly accept, apply, and/or credit the April 1, 2020 mortgage payment to the Loan, which is a covered error under 12 C.F.R. §§ 1024.35(b)(1), (2), (3), or (11). *See*, Exhibit 7.

88.     As Shellpoint failed to provide Plaintiffs with any response to NOE #2, Shellpoint failed to timely respond to NOE #2 within thirty (30) days (excluding legal public holidays, Saturdays, and Sundays). *See* 12 C.F.R. § 1024.45(e)(3)(i)(C).

89.     Shellpoint's failure to timely respond to NOE #2 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k).

90.     Shellpoint did not satisfy its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) to correct the errors through NOE #2 as shown by its (1) failure to implement the permanent modification after receipt of the executed March 2020 Modification Documents and (2) failure to properly accept, apply, and/or credit future mortgage payments.

91.     Shellpoint did not satisfy its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) as Shellpoint failed to perform a reasonable investigation into the errors alleged through NOE #2 as a review Shellpoint's servicing file and tracking information would indicate that Shellpoint received a fully executed copy of the March 2020 Modification Documents. *See*, Exhibit 6.

92.     Shellpoint's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #2 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Plaintiffs have suffered actual damages as detailed, *supra*.

**(NOE #3)**

93.     Through NOE #3, Plaintiffs alleged that Shellpoint (1) failed to timely provide Plaintiffs with the May 2020 Modification Documents, which is a covered error under 12 C.F.R. §§ 1024.35(b)(11) (*see* 81 Fed. Reg. 72160, 72281) and (2) failed to properly accept, apply, and/or credit multiple mortgage payments to the Loan, which constitute covered errors under 12 C.F.R. §§ 1024.35(b)(1), (2), (3), or (11). *See*, Exhibit 8.

94.     As Shellpoint failed to provide Plaintiffs with any response to NOE #3, Shellpoint failed to timely respond to NOE #3 within thirty (30) days (excluding legal public holidays, Saturdays, and Sundays). *See* 12 C.F.R. § 1024.45(e)(3)(i)(C).

95.     Shellpoint's failure to timely respond to NOE #3 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k).

96.     Shellpoint did not satisfy its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) to correct the errors through NOE #3 as shown by its failure to properly accept, apply, and/or credit future mortgage payments.

97.     Shellpoint did not satisfy its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) as Shellpoint failed to perform a reasonable investigation into the errors alleged through NOE #3 as Shellpoint has continued to refuse to implement the permanent modification despite Plaintiffs' full compliance with the obligations set forth by Shellpoint.

98.     Shellpoint's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #3 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Plaintiffs have suffered actual damages as detailed, *supra*.

99.     Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

100.     As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

101.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO:
## VIOLATION OF THE CONSUMER FRAUD ACT

102.     Plaintiffs repeat and reallege paragraphs 1 through 68 with the same force and effect as though fully set forth, *infra*.

103.     The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate …

N.J.S.A. § 56:8-2.

104.     Shellpoint is a "person" as defined by N.J.S.A. § 56:8-1(d) because Shellpoint is a partnership, corporation, company, trust, business entity, or business association.

105.     The CFA applies to mortgage servicing generally and to unconscionable business practices with regard to modification of mortgage loans. *D'Alessandro v. Ocwen Loan Servicing, LLC*, No. 18-01290, 2018 U.S. Dist. LEXIS 86482, at *12 (D.N.J. May 23, 2018); *Laughlin v. Bank of Am., N.A.*, Civil Action No. 13-4414, 2014 U.S. Dist. LEXIS 79441, at *6 (D.N.J. June 11, 2014).

106.    In the operation of its business, Shellpoint has engaged in the use of unconscionable commercial practices, as described, *supra*.

107.    Shellpoint's actions in refusing to implement the permanent modification, despite Plaintiffs' full compliance with the TPP, March 2020 Modification Documents, and May 2020 Modification Documents constitute unconscionable practices, deception, fraud, false promises, and/or misrepresentations under the CFA.

108.    Shellpoint's actions in failing to properly accept, apply, and/or credit Plaintiffs' mortgage payments constitute unconscionable practices, deception, fraud, false promises, and/or misrepresentations under the CFA.

109.    Shellpoint's actions in demanding that Plaintiffs "record" the permanent modification and obtain "court approval" from the bankruptcy court constitute unconscionable practices, deception, fraud, false promises, and/or misrepresentations under the CFA.

110.    Each unconscionable practice, deception, fraud, false promise, and/or false promise by Shellpoint described, *supra*, constitutes a separate violation under the CFA.

111.    Shellpoint's unconscionable practices, deception, fraud, false promises, and/or misrepresentations have caused Plaintiffs to suffer the following ascertainable losses:

   a.  They lost out on the benefit of the TPP and permanent modification promised under the TPP;

   b.  They lost out on the benefit of the permanent modification promised under the March 2020 Modification Documents;

   c.  They lost out on the benefit of the permanent modification promised under the May 2020 Modification Documents;

   d.  Shellpoint refuses to accept, apply, or credit payments towards the Loan and, on information and belief, has assessed improper fees and/or charges to the Loan;

   e.  Plaintiffs had to retain and pay legal counsel to submit the

requests for information and notices of error to Shellpoint, pay postage costs for the mailing of those documents, and review the responses to those documents;

f.   The Loan remains in default; and

g.   Shellpoint is actively reporting the Loan as delinquent;

h.   Plaintiffs have been unable to secure the FHA forbearance. Shellpoint's actions have directly and adversely affected Plaintiffs in that Plaintiffs have been forced to continue their mortgage payments, which in turn has caused them to fall behind on other bills., as discussed, *supra*; and

i.   Extreme emotional distress directly and proximately caused by not knowing day to day whether or not Plaintiffs will lose the Home.

## COUNT THREE:
## BREACH OF CONTRACT

112.   Plaintiffs repeat and reallege paragraphs 1 through 68 with the same force and effect as though fully set forth, *infra*.

113.   The TPP, March 2020 Modification Documents, and May 2020 Modification Documents (the "Contracts") represent an enforceable contract between Plaintiffs and Shellpoint. *See*, Exhibits 3, 5, and 9.

114.   Shellpoint offered the TPP to Plaintiffs on or about October 24, 2019. *See*, Exhibit 3.

115.   The TPP provided that in order for Plaintiffs to accept Shellpoint's offer, they were required to make payments for December 2019, January 2020, and February 2020. *See*, Exhibit 3.

116.   Plaintiffs accepted the TPP and performed on their obligations under the terms of the TPP by making the payments for December 2019, January 2020, and February 2020. *See*, Exhibits 4 and 5.

117.     Shellpoint offered a permanent modification, as demonstrated by the March 2020 Modification Documents, to Plaintiffs on or about March 6, 2020. *See*, Exhibit 5.

118.     The March 2020 Modification Documents provided that in order for Plaintiffs to accept Shellpoint's offer, they were required to return the agreement by March 20, 2020 and continue to timely make all payments. *See*, Exhibit 5.

119.     Plaintiffs accepted the permanent modification and returned the executed March 2020 Modification Documents to Shellpoint, who received such on March 18, 2020. *See*, Exhibit 6.

120.     Shellpoint offered a permanent modification, as demonstrated by the May 2020 Modification Documents, to Plaintiffs on or about July 29, 2020. *See*, Exhibit 9.

121.     The May 2020 Modification Documents provided that in order for Plaintiffs to accept Shellpoint's offer, they were required to return the agreement by May 20, 2020 and continue to timely make all payments. *See*, Exhibit 9.

122.     However, it was impossible for Plaintiffs to return the agreement by May 20, 2020 when Shellpoint mailed such on July 29, 2020.

123.     Plaintiffs again accepted the permanent modification and returned the executed May 2020 Modification Documents to Shellpoint, who received such on August 12, 2020. *See*, Exhibit 9.

124.     Shellpoint breached the Contracts by refusing to implement the permanent modification and refusing to properly accept, apply, and/or credit mortgage payments made pursuant to their terms.

125.     Shellpoint also breached the Contracts by insisting that Plaintiffs incur attorneys fees and costs to "record" the Contracts and obtain "court approval" from the bankruptcy court.

126.     Shellpoint owed Plaintiffs a fiduciary duty to handle the Contracts properly and in accordance with their terms. Shellpoint breached this duty by refusing to implement the permanent modification and refusing to properly accept, apply, and/or credit mortgage payments made pursuant to their terms.

127.     Shellpoint's intentional and knowing conduct caused Plaintiffs to suffer extreme emotional distress driven by the fear that they would be evicted from the Home, which resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which was a foreseeable result of its breach of the Contracts.

128.     Shellpoint's breach of the Contracts directly and proximately caused Plaintiffs to suffer actual damages, as discussed, *supra*.

<h2 style="text-align:center">COUNT FOUR:<br>VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING</h2>

129.     Plaintiffs repeat and reallege paragraphs 1 through 68 with the same force and effect as though fully set forth, *infra*.

130.     Shellpoint is in privity of contract with Plaintiffs, through the Loan, the TPP, and the March 2020 Modification Documents, and May 2020 Modification Documents (the "Contracts"), and as such is obligated by contract and common law to act in good faith and deal fairly with Plaintiffs. *See*, Exhibits 1, 3, 5, and 9.

131.     The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

132.     Shellpoint violated the covenant of good faith and fair dealing with respect to the Contracts by refusing to implement the permanent modification and failing to accept, apply, and/or credit Plaintiffs' mortgage payments made pursuant to the Contracts.

133.    Shellpoint has repeatedly acted in bad faith, dishonesty, and with an improper motive to injure the rights of Plaintiffs.

134.    Due to Shellpoint's conduct, Plaintiffs have suffered actual damages, as discussed, *supra*.

135.    Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress

136.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for specific performance in the implementation of the permanent modification, specific performance in correcting the Loan's accounting, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs Sally Weber, Christopher Weber, and Lawrence Weber respectfully requests that this Court enter an order granting judgment in his favor and against Defendant NewRez LLC, d/b/a Shellpoint Mortgage Servicing for the following:

A.    An award of actual damages as to allegations contained in Counts One through Four;

B.    An award of statutory damages of Two Thousand Dollars ($2,000.00) for each violation of RESPA contained in Count One;

C.    An award of treble damages as to the allegations contained in Count Two;

D.    Shellpoint's specific performance in implementing the permanent modification and correction of the accounting on the Loan;

E.    For reasonable attorneys' fees and costs as to the allegations contained in Counts One and Two; and,

F.      Such other relief this Court may deem just and proper.

Respectfully submitted,

*/s/ Javier L. Merino*
Javier L. Merino #078112014
**THE DANN LAW FIRM, PC**
372 Kinderkamack Rd, Ste. 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Javier L. Merino*
Javier L. Merino #078112014
**THE DANN LAW FIRM, PC**

*Counsel for Plaintiffs*